**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF KENTUCKY**
**CENTRAL DIVISION AT LEXINGTON**

| | |
|---|---|
| **BRITTANY BARNES,** | **CASE NO. 5:25-CV-001-KKC** |
| **Plaintiff,** | |
| **v.** | **OPINION and ORDER** |
| **UNITED STATES OF AMERICA,** | |
| **Defendant.** | |

**\*\*\* \*\*\* \*\*\***

This matter is before the Court on the Defendant United States of America's Motion for Partial Dismissal (R. 9). The United States moves to dismiss Plaintiff Brittany Barnes' negligent hiring, retention, and/or supervision claim, her request for pre-judgment interest, and her jury trial demand. (R. 6 at 1.) Now that this matter is fully briefed, it is ready for review. For the following reasons, the United States' Motion is granted.

## I.  FACTUAL BACKGROUND

This case relates to the medical treatment provided to Barnes by Dr. Byram Ratliff and Sterling Health Solutions, Inc. ("Sterling Health Care") (R. 1 at 1.) Sterling Health Care is a federally funded facility located in Mount Sterling, Kentucky. (R. 7 at 1.)

On October 13, 2017, Barnes underwent a laparoscopic bilateral tubal ligation using Filshie clips. (*Id.*) This procedure was performed by Dr. Aaron Ferda, and there were no documented complications. (*Id.*) At Barnes' October 20, 2017 postoperative visit, she reported no issues. (*Id.*)

Nearly three years later, on July 16, 2020, Barnes established care with Dr. Ratliff at Sterling Health Care. (*Id.*) Barnes reported extremely heavy and prolonged periods that caused her severe abdominal pain. (*Id.*) Although she expressed interest in ablation, a

procedure designed to combat her symptoms, Dr. Ratliff recommended a Mirena Intrauterine Device ("IUD"). (*Id.*)  On August 17, 2020, Barnes received the IUD. (*Id.*) The nurse who placed the IUD noted her prior tubal ligation. (*Id.*)  At a September 17, 2020, follow-up, Barnes' reported that her symptoms of continued heavy bleeding and weight loss persisted. (*Id.* at 1–2.) She was then placed on oral contraceptives for 2–3 months by Dr. Ratliff. (*Id.* at 2.)

On October 7, 2020, after unsatisfactory results with the oral contraceptives, Barnes elected to proceed with a laparoscopic-assisted total vaginal hysterectomy with bilateral salpingectomy. (*Id.*) Dr. Ratliff performed the procedure on November 10, 2020. (*Id.*) The operative report did not note the clips or their location on the Fallopian tubes. (*Id.*) This procedure did not cure Barnes' symptoms, and she continued to report painful urination and worsening back pain. (*Id.*)

In early 2021, Barnes visited Community Family Clinic, where she underwent a computed tomography ("CT") scan that revealed a small amount of pelvic fluid and Filshie clips present in the pelvis. (*Id.*) According to Barnes, the Filshie clips had moved from their original location. (*Id.*) This was supposedly the cause of her symptoms. The next day, Dr. Ratliff evaluated Barnes for gross hematuria, but apparently did not notice that the Filshie clips had moved. (*Id.*) Dr. Ratliff noted minimal pelvic fluid on prior CT, and observed something floating in the bladder on ultrasound. (*Id.*) He ordered urinalysis, urine culture, and a cystogram, the results of which came back normal. (*Id.*) Dr. Ratliff made a note about there being Filshie clips in the pelvis. (*Id.*)

Over a year and a half later on October 26, 2022, Barnes returned to Dr. Ratliff with recurring abdominal and pelvic pain, the same pain that had prompted her hysterectomy, along with severe diarrhea and weight loss. (*Id.*) Dr. Ratliff prescribed a course of Depo-

Lupron with a plan for possible surgery if she saw no improvement within six months. (*Id.*) On November 15, 2022, an x-ray obtained by gastroenterologist Dr. Uday Shankar documented the Filshie clips in the pelvis. (*Id.*) On November 18, 2022, Barnes declined a further dose of Depo-Lupron and proceeded with surgical evaluation. (*Id.*)

On December 21, 2022, Dr. Ratliff performed a preoperative evaluation in preparation for a laparoscopic bilateral oophorectomy, a procedure to remove both ovaries. During the evaluation, Dr. Ratliff documented Barnes' long-standing, confirmed history of endometriosis, her prior hysterectomy, worsening recurrent pain, and her request for treatment. (*Id.* at 3.)

On January 10, 2023, Dr. Ratliff performed the bilateral oophorectomy. (*Id.*) He documented that both ovaries appeared normal without abnormal adhesions, significant scarring was present in the cul-de-sac, no active endometriosis was seen, and Filshie clips from the 2017 tubal ligation were found in the pelvis and removed. (*Id.*) After this surgery Barnes was able to report complete resolution of her pain and symptoms. (*Id.*)

On July 22, 2024, Barnes filed a claim for damage, injury, or death ("SF 95") with the U.S. Department of Health and Human services ("HHS") under the Federal Tort Claims Act ("FTCA"). (R. 7 at 12.) Her tort claim was denied by the agency on November 26, 2024. (R. 1-2 at 1.) Consistent with her rights under the FTCA, Barnes initiated this action on January 2, 2025.

Barnes' Complaint asserts claims for medical negligence and negligent hiring, retention and/or supervision (hereinafter, "negligent hiring"). (R. 1 at 6–7.) She also requests a jury trial and pre-judgment interest. (*Id.* at 8.) In response to her Complaint, the United States moves to dismiss her negligent hiring claim, her request for pre-judgment interest, and her jury trial demand. (R. 6 at 1.)

## II.  LEGAL FRAMEWORK

### A.  Standard of Review

A court must dismiss a complaint if it "fail[s] to state a claim upon which relief can be granted[.]" Fed. R. Civ. P. 12(b)(6). To properly state a claim, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief[.]" Fed. R. Civ. P. 8(a)(2). When considering a motion to dismiss, courts must presume all factual allegations in the complaint to be true and make all reasonable inferences in favor of the non-moving party. *Total Benefits Plan. Agency, Inc. v. Anthem Blue Cross & Blue Shield*, 552 F.3d 430, 434 (6th Cir. 2008) (citation omitted). "A pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action will not do. Nor does a complaint suffice if it tenders naked assertion[s] devoid of further factual enhancement." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted).

To survive a motion to dismiss, a plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556). "A complaint will be dismissed . . . if no law supports the claims made, if the facts alleged are insufficient to state a claim, or if the face of the complaint presents an insurmountable bar to relief." *Southfield Educ. Ass'n v. Southfield Bd. of Educ.*, 570 F. App'x 485, 487 (6th Cir. 2014) (citing *Twombly*, 550 U.S. at 561-64).

### B.  Federal Tort Claims Act

4

The United States may not be sued absent its consent. *Mackey v. United States*, 247 F. App'x 641, 643 (citing *United States v. Mitchell*, 445 U.S. 535, 538 (1980)). The FTCA, a limited waiver of sovereign immunity, is "the exclusive remedy for suits against the United States or its agencies sounding in tort." *Himes v. United States*, 645 F.3d 771, 776 (6th Cir. 2011) (citing 28 U.S.C. § 2679(a)) (citation omitted). The terms of the United States' consent to be sued as set forth in the FTCA fix the boundaries around a federal court's jurisdiction over such cases. *Stout v. United States*, 721 F. App'x 462, 466 (6th Cir. 2018). The FTCA authorizes suits against the United States:

> for money damages . . . for injury or loss of property, or personal injury or death caused by the negligent or wrongful act or omission of any employee of the Government while acting within the scope of his office or employment, under circumstances where the United States, if a private person, would be liable to the claimant in accordance with the law of the place where the act or omission occurred.

28 U.S.C. § 1346(b)(1). Because the FTCA provides only a limited waiver of the federal government's sovereign immunity, claims that fail to survive a 12(b)(6) motion to dismiss deprive the district court of subject-matter jurisdiction, authorizing dismissal under 12(b)(1) or 12(b)(6). *Brownback v. King*, 592 U.S. 209, 217-18 (2021). Additionally, The FTCA has an exhaustion requirement: "An action shall not be instituted upon a claim . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a).

### III.  ANALYSIS

The United States moves to dismiss this action pursuant to Federal Rule of Civil Procedure 12(b)(1) and 12(b)(6). (R. 6 at 1.) The United States asserts that as to Barnes' negligent hiring claim: (1) she fails to state a claim; (2) she failed to present that claim in her SF 95 before the HHS; and (3) the claim is subject to the discretionary function exception. Because Barnes failed to properly state a claim which relief can be granted, and also failed

to exhaust her administrative remedies, the Court need not address the merits of the discretionary function exemption.

### A.  Barnes Fails to State a Negligent Hiring Claim

Barnes' claim for negligent hiring makes conclusory allegations. Her pleading fails because it does not present any facts to show that Sterling Health Care is liable for negligently hiring, retaining, or supervising Dr. Ratliff. In its entirety, Count III of Barnes complaint provides:

> 39.    Plaintiff incorporates all allegations of the preceding paragraphs as if fully set forth herein.
>
> 40.    At all times pertinent hereto, Defendant had a duty not to hire, retain, or fail to properly supervise a medical provider who was providing services to Ms. Barnes and was not qualified or capable of complying with or adhering to the applicable standard(s) of medical treatment, diagnosis, and care for her, and/or was not qualified or capable of providing that degree of care and skill which is expected of a reasonably competent medical provider acting in the same or similar circumstances.
>
> 41.    Defendant violated the duty set forth in ¶ 40 of this Complaint by hiring, retaining, and/or failing to properly supervise Dr. Ratliff.
>
> 42.    As a direct and proximate result of Defendant's violation of the duty set forth in ¶ 40 of this Complaint, Ms. Barnes has suffered severe injuries and damages for which Ms. Barnes is entitled to recover against Defendant.

(R. 1 at 7–8.) These allegations do not plead factual content. Rather, they formulaically recite the elements of a negligent hiring claim. Barnes provides no facts specifying how or why Mount Sterling Healthcare was negligent. This type of pleading is exactly the type of conclusory allegations and legal conclusions dressed in factual garb that are insufficient to overcome a motion to dismiss. *See Stout v. United States*, 721 F. App'x 462, 467 (6th Cir. 2018) (citing *O'Bryan v. Holy See*, 556 F.3d 361, 275–76 (6th Cir. 2009)). While the Court must accept all factual allegations as true, it is not bound by legal conclusions that bear no factual basis. *Iqbal*, 556 U.S. at 678. Accordingly, Barnes' negligent hiring claim is

6

insufficient to overcome a motion to dismiss. Count III of her Complaint can be dismissed on this basis alone.

### B. Barnes' Negligent Hiring Claim Fails Because She did not Exhaust Her Administrative Remedies

Additionally, Barnes' negligent hiring claim must be dismissed because it was not properly presented during the administrative process as required by the FTCA. The FTCA requires that claimants give government agencies an initial opportunity to resolve claims: "[a]n action shall not be instituted upon a claim . . . unless the claimant shall have first presented the claim to the appropriate Federal agency and his claim shall have been finally denied by the agency in writing." 28 U.S.C. § 2675(a).

The United States argues that Barnes did not properly present her negligent hiring claim to HHS because her SF 95 did not disclose facts supporting such a theory. (R. 6 at 8.) Barnes responds that she was not required to specify every legal theory, so long as she provided sufficient factual notice. (R. 7 at 4.)

The record, however, demonstrates that Barnes' submission did not meet the FTCA's relatively minimal notice threshold. *See Abbott v. United States*, 78 F.4th 887, 896 (6th Cir. 2023) (quoting *Knapp v. United States*, 844 F.2d 376, 379 (6th Cir. 1988)). In Section 8 of her SF 95, Barnes provided a one-and-a-half page narrative describing her claim. (R. 7 at 14–15.) That narrative focuses exclusively on the conduct of Dr. Ratliff. It does not reference Sterling Health Care's hiring practices, supervision, retention decisions, or any involvement by other medical personnel. To the contrary, Barnes concludes by attributing her injuries solely to Dr. Ratliff: "[i]f Dr. Ratliff had not deviated from the standard of care in November of 2020 by failing to locate the Filshie clips (or even note that they had migrated), Ms. Barnes could have avoided 2+ years of chronic pain and urinary issues." (R. 7 at 15.)

This explanation does not provide HHS notice of her intent to pursue a negligent hiring claim, nor did it allow them to place any sort of value on a negligent hiring claim. *See Sellers v. United States*, 870 F.2d 1098, 1101 (6th Cir. 1989). As such, a plain reading of Barnes' SF 95 would prompt HHS to investigate Dr. Ratliff's conduct, not Sterling Health Care's decision to hire, retain, or supervise him. Barnes' claims outline specific conduct directly attributable to Dr. Ratliff, not his employer.

Barnes' reliance on *Vardanyan v. United States* is unavailing. There, the court reiterated that a plaintiff need not "articulate a precise cause of action," but must provide a sufficient factual predicate. No. 1:23-CV-831, 2024 WL 3349681, at 2 (W.D. Mich. June 17, 2024). Even under that lenient standard, the court found the plaintiff's notice deficient because it described only discrete incidents, "the sexual assault and inmate assault" but failed to reference broader theories involving the Bureau of Prisons' contracting, placement, or monitoring decisions. *Id. at* 6. Accordingly, the court rejected the plaintiff's attempt to expand his claims to include "systemic failures" not raised at the administrative level. *Id.*

The same principle applies here. Barnes' administrative claim was narrowly tailored to Dr. Ratliff's alleged malpractice and did not include any facts suggesting negligent hiring, supervision, or retention. Permitting her to pursue those theories now would undermine the FTCA's exhaustion requirement by allowing litigation of claims that HHS had no opportunity to investigate or resolve previously.

This conclusion is consistent with both the FTCA's notice requirement and the limited scope of the government's waiver of sovereign immunity. *See Ellison v. United States*, 531 F.3d 359, 361 (6th Cir. 2008). Because Barnes failed to provide sufficient notice of her negligent hiring claim, she did not exhaust her administrative remedies. Accordingly, that claim is dismissed.

**C. Barnes' Requests for Pre-Judgment Interest and a Jury Trial are Denied**

Barnes' Complaint seeks pre-judgment interest and a trial by jury. (R. 1 at 8.) However, the FTCA expressly prohibits both requests. This Court's jurisdiction to hear claims against the United States is "subject to the provisions of chapter 171" of Title 28. *See* § 1346(b)(1). Section 2674 of chapter 171 states in part that the United States cannot be "liable for interest prior to judgment." Additionally, 28 U.S.C. § 2402 provides that "any action against the United States under section 1346 shall be tried by the court without a jury." Barnes agrees to dismiss these requests. (R. 7 at 9.) Accordingly, the Court will dismiss her request for pre-judgment interest and a jury trial.

## IV.  CONCLUSION

For the aforementioned reasons, the Court herby ORDERS the following:

1) The Defendant's Motion to Dismiss (R. 6) is GRANTED;

2) The Plaintiff's negligent hiring, retention and/or supervision claim set forth in Count III of the Complaint (R. 1) is DISMISSED;

3) The Plaintiff's request for pre-judgment interest is DISMISSED; and

4) The Plaintiff's request for a jury trial is DISMISSED.

This 22nd day of June, 2026.



Signed By:

*Karen K. Caldwell*

**United States District Judge**

9